## EPHRAIM THAYER *v.* THE VERMONT CENTRAL RAILROAD CO.

### *Contract.*

Where the plaintiff, as a sub-contractor, under one Belknap, contracted to build a section of defendant's road, and the engineers of the company had authority to direct the removal of earth from one section to another when needed, and by the contract between the company and Belknap the contractor, he, Belknap, was bound to move earth from one section to another, but no engineer had power to bind the company, (the defendants in this case,) by any contract for grading or removing earth, and if Belknap was required by engineers so to move earth, he could obtain compensation under his contract. And the plaintiff while to work on the section thus taken of Belknap was required by an engineer of defendants to move earth from the section he was building to another, under the assurance that defendants would pay for the same, it being extra haul. And this was beneficial to defendants, and plaintiffs charged them no more than it would have cost defendants to have procured the earth elsewhere, but it did not appear that defendants ever consented to have plaintiff do it upon their credit, or that they had knowledge that plaintiff was doing it upon their credit; and the plaintiff has no general contract with defendants, their contract for all this work being with said Belknap; under these facts, *it was held,* that plaintiff could not recover of the defendants for this labor. It was also held, that there was nothing in the general duties of an engineer, that would authorize him to employ others to do the work on the road, which by express contract belonged to the contractors to do.

BOOK ACCOUNT. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts substantially as follows :—

The item in controversy is for sixty-two days works of three men and six horses and carts, at $7,50 per day—$465,00.

The services, of the plaintiff embraced in this charge, were rendered in removing earth from section 18 to 19, and were necessa-

ry to make grade on defendants road, their being an excess of earth on section 18, and a deficiency on section 19; that without this removal from section 18 to 19, this excess would have been wasted and the company obliged to borrow elsewhere. That S. F. Belknap was original contractor with said Railroad Company, for the grading of said road throughout many sections, including sections 18 and 19; of which contract between said Belknap and said company the plaintiff had notice.

That at the time plaintiff performed these services, he was to work under a contract, between himself and said Belknap, to grade said section 18, or a part of it, which contract is in writing, and under seal, and in part is as follows, that is to say, that part of the contract between Belknap and plaintiff, and between Belknap and defendants, necessary in determining the question at issue.

" Sec. 2. All grading shall be done and estimated by the cubic " yard, measured in excavation, and shall be comprised under the " following heads, viz.: earth, rotten ledge, and solid ledge.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

" 　Sec. 6. The earth, gravel, and other materials, except stone, " suitable for masonry and other purposes taken from excavations " upon any section, shall be used and applied in the formation of " embankments on the same section, and when the quantity of ma- " terials taken from any excavation shall be greater than that re- " quired to make the embankments of the usual width, the surplus " shall be deposited on one, or both sides of the embankments, in " such manner as to increase their width uniformly, or in such oth- " er manner as S. F. Belknap or the engineer shall direct."

[The contract between defendants and said Belknap is precisely like this, except in the former, the words " S. F. Belknap or'" do not occur; in all other respects they are alike.]

" In cases where the quantity of materials taken from the exca- " vations in any section shall not be sufficient for the formation of' " the requisite embankments, the deficiency shall be supplied by " materials taken from the adjacent grounds, at such places as S.. " F. Belknap or the engineer may designate, or from an enlarge- " ment of the excavations made equally and uniformly on one side " or both sides of the same, or in such other manner as S. F. Bel- " knap or the engineer may deem necessary and proper; and the

XXIV.　29

"sides of the excavations, in all such cases, shall be dressed off to "such slope as the engineer shall require; provided that if such "contractor shall have sloped such excavations according to the "directions of the engineer, before widening the same, he shall re-"ceive for sloping the second time, such compensation as said en-"gineer may deem fair and reasonable; provided, also, that no "contractor shall be required to supply the deficiency of materials "last referred to, at an expense of haul greater than the average "haul of the section."

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*

"Sec. 15. \* \* \* \* \* Nor shall any claims be made or "allowed for extra work, unless the same shall have been done in "pursuance of written contracts or orders, signed by the engineer; "and all claims for work done under such written contracts or or-"ders, or on any other account, shall be presented for settlement, "on or about the beginning of the month following that in which "said work may have been done,—or at any other time within "three days after the engineer shall have demanded the same; "and in case of failure so to present them, the contractor shall for-"feit all such claims, and hereby is pledged not to present them "in any way afterwards."

"Sec. 8. All stone taken from excavations shall be removed to "such places, within the average haul of the section, as S. F. "Belknap or the Engineer may designate."

The plaintiff contracted with Belknap solely to do said work, and to their contract the defendants were not a party, in its inception. That while the work was in progress by the plaintiff, one Newell, who was an assistant engineer on said road, in the employ of said company, and whose business it was to overlook and make estimates of the work, told the plaintiff, if he would move said earth from section 18 to 19, he should have his pay for it,—that the company would pay him for the same; that in pursuance of that direction of Newell, the plaintiff went on and performed the work; that the plaintiff had no contract for work on section 19; that the work was actually performed by the plaintiff, and was *beneficial* to the defendants; that had not the plaintiff made this extra haul from 18 to 19, the defendants would have been under the necessity of borrowing from elsewhere to fill up the space thus filled by the plaintiff's extra haul; that neither the plaintiff or any

other person, has received pay for this extra work; that the same was undertaken and executed by the plaintiff, on the assurance of said Newell that he should be paid therefor by the company,—that said Newell had no express authority to make such a contract. The President and other officers of the road, passed over said sections 18 and 19, while the plaintiff was performing these services, and might have known that the services were being rendered and were beneficial, and they made no objections. That if the defendants had not had this extra haul by the plaintiff, it might have cost them to supply it from some other quarter, as much as the plaintiff has charged them for the same; that no unnecessary teams, men, or labor were used by the plaintiff in the execution of said work, and that the price therefor charged, seems to be reasonable; that the same has never been estimated nor paid for to the plaintiff, by the company, or by any body else. The custom on the line of the road was, for the assistant engineers, at the end of every month, to make out their accounts of work, on the different sections under contract to Belknap, and return the same to the chief engineer, and from these accounts the chief engineer made the whole estimates; what he called the aggregate estimates of the whole road; for the amount of which he drew his draft on the Treasurer.

For the convenience of the sub-contractors and of Belknap, the chief engineer made a return of the work done for Belknap, by each sub-contractor, in detail to Belknap. The assistant engineers were employed and paid by the company. All the engineers of the company had authority to direct the removal of earth from one section to another when needed, but no engineer had power to bind the company, by any contract for grading or removing earth, and by the contract between the company and Belknap, Belknap was bound to move earth from one section to another.

The county court, January term, 1852,—COLLAMER, J., presiding, rendered judgment for defendants as to the said item in the report. Exceptions by plaintiff.

*J. P. Kidder* and *P. Perrin* for plaintiff.

1. As to item for extra haul. The report finds, that plaintiff removed the earth under the direction of an engineer in the employ of the defendants, who agreed with plaintiff that the defend-

ants should pay him for the extra services; that the engineer had authority to give such directions which plaintiff was bound to obey; that the services were " *extra*" and *beneficial* to the defendants; that there was an excess of earth on section 18 and a deficiency on 19; that the defendants would have had to borrow elsewhere to fill the space thus filled by plaintiff's "extra haul"; that plaintiff nor any one else, had pay for the same; that the president and other officers of the company saw the plaintiff performing these services, and made no objections; that if defendants had not had this "extra haul" it might have cost them to supply it from some other quarter as much as plaintiff has charged, and that the price charged therefor is reasonable.

On these facts, the defendants are liable. *Vt. C. R. R. Co.* v. *Baxter*, 22 Vt. 365. *Vide*. Sec. 6, in contract between the parties.

2. Belknap was to have pay, and also plaintiff, for earth, by the cubic yard, measured in excavation; the haul, then, "greater than the average haul of the section" is to be paid for by the defendants, to any person who may perform the service.

Belknap would have no claim on them (defendants) for service that *he* did not perform.

The plaintiff not doing the work *for* Belknap, he must loose his pay therefor unless he can hold the company, who have received the benefits thereof, *without paying for the same*. *Vide*. Sec. 2 and 6 of contracts between parties.

*Peck & Colby* for defendants.

1. The fact that Newell directed the removal of the earth to section 19, and promised payment to the plaintiff, does not make the defendants liable, as the auditor has found that Newell had no authority to bind the corporation by such promise. *It does* not appear that the defendants ever ratified or adopted the act of the engineer, or even had any knowledge of it. The defendants are not to be charged on this ground.

2. The auditor reports "that the president and other officers of " the road passed over sections 18 and 19 while the plaintiff was " performing the services, and might have known that the services " were being rendered and were beneficial, and they made no ob- " jection."

In order to charge the defendants on this view of the case, it

should appear that they understood, or had reason to believe, that the plaintiff looked to them for paymént. No such fact is found by the auditor, and from the facts detailed, it is apparent, that they could not have acted on such a belief. Belknap had contracted to grade the whole road, and the auditor has found, that by the terms of the contract he was bound to remove earth from one section to another, when directed to do so by the engineer. There was no contract between plaintiff and defendants, and for aught that appears, the latter had no knowledge of the terms or extent of the plaintiff's contract with Belknap. When the officers of the corporation saw the plaintiff performing the labor, they would naturally have supposed that it was done by the direction of, and for Belknap, who had agreed to do *all* the work. Under these circumstances, it was the duty of the plaintiff, if he intended to look to the defendants for payment, to have apprised them of his intention. The plaintiff having, by the direction of the engineer, done no more than Belknap was bound to do, must look to him for payment. No estimate of this work was made to the plaintiff, and whether made to any one else, is not an enquiry which effects the rights of the parties in this action. An estimate must have been made and paid to Belknap.

3. We insist that by the terms of the contract between the plaintiff and Belknap, the plaintiff was bound to remove the earth on to section 19, if so directed by an engineer. The plaintiff having done no more than he was required to do by his contract, he can have no legal claim on the defendants.

4. By the stipulation numbered 15, in the contract between Belknap and the defendants, and between plaintiff and Belknap, the plaintiff, has no right to claim payment for any extra work, unless that work was done in pursuance of a *written* order or contract signed, by the engineer. If the labor in question does not fall within this contract, then it is *extra* work, for which the plaintiff cannot recover, as it was not done under any *written* order. This stipulation was inserted to protect the company from these extra claims, and it is highly important to their interests that it* should be enforced.

BY THE COURT. The item in controversy in this case, is for sixty-two days work of three men and six horses and carts, at

$7,50 per day, $465,00. This is claimed, as extra haul of dirt from one section of defendants road, which plaintiff had contracted with S. F. Belknap to build, to another section, by direction of one Newell, an assistant engineer of the company, under the assurance that the company would pay the plaintiff for it.

It is claimed by the defendants, that it does not appear, that plaintiff was not bound to perform this work to finish his own cantract, and that he has not really, had pay for it.

But the auditor spoke of it as "extra haul," and says it was beneficial to defendants, and that the same amount of dirt must have been borrowed from elsewhere, had it not been for this extra haul, and treats the account as reasonable in amount. So that we can scarcely regard it, as the mere performance of his own contract with Belknap. If it appeared that plaintiff had charged his entire time, while employed in hauling dirt upon section 19, some deduction should undoubtedly be made, since the plaintiff would get pay for removing the dirt, by the estimate of his excavation, and so should only be allowed what it cost him to remove the dirt to section 19, more than it would, to dispose of it upon number 18, by the ordinary embankments. But nothing of this kind appears, and we must regard it all as extra haul, and it was beneficial to defendants and plaintiff has not been paid, and should be, by some one.

The question is, then, can he recover it of defendants. He had no general contract with defendants. Their contract, for all this work, was with Belknap. And the auditor expressly reports, " All the engineers of the company had authority to direct the removal of earth from one section to another, when needed, and by the contract between the company and Belknap, he was bound to move earth from one section to another, *but no engineer had power to bind the company, by any contract for grading or removing earth.*" This labor, then, so far as the company was concerned, comes within this contract with Belknap ; he was bound to perform it, if required so to do by the engineer, and, of course, could obtain compensation under his contract.

But notwithstanding this, they might employ some one else to do it, or they might adopt the act of some one else, doing it.

This could not be claimed, upon the mere ground that it was beneficial to defendants. One cannot compel another to become

his debtor, even by doing him good. And if this were merely the performance of Belknap's contract, it would really enure to *his* benefit.

There must be shown something, which amounts to a consent of the company, to have the plaintiff do it upon their credit.

The fact, that the president and other officers of the company, passed along while the work was doing, " and might have known that plaintiff was doing it, and it was beneficial, and made no objection," could amount to but little, unless knowledge was brought home to them, that plaintiff was doing it upon the *credit of the company.* They would naturally suppose he was doing it for Belknap, or that in some way, it was being done under Belknap's contract with the company, so far as they were concerned, as they had made no other contract. They would scarcely be required, to inquire into the terms of the contract, between Belknap and his workmen, or sub-contractors, and no inference could fairly be made against them, as to having made a new contract with some third person, upon that ground, as it seems to us.

And it seems to us equally obvious, that Newell, could not bind the company by any such contract. If he could, so could all the engineers, and the defendants position would be rendered somewhat perilous, and the restrictions in their written contracts would be of little avail. The auditor, it seems to us, entirely disposes of this; for he not only says, that this engineer "Newell had no express authority to make such a contract," but as has been before stated, that "*no engineer had power to bind the company, by any contract for grading, or removing earth.*" This is too explicit to be evaded, or overcome, unless we can see from the contract, or the relation of the engineers to the company, that the auditor has misconceived their power.

As between the company and their contractors, the contract seems to us to have expressly denied the power of the engineers, or the chief engineer, to bind the company for extra work, except in a particular mode, *by writing,* and then, the claim to be presented and adjusted, in a prescribed time and mode.

And there is surely nothing in the general duties of an engineer, that would authorise him to employ others to do the work on the road, which by express contract belonged to the contractor to do. If he could do this, he might have rescinded the entire contract with Belknap, and let the work to others.

For when it is claimed to set up an independent contract, made with a third person, by a sub-engineer, to do work let to the general contractor with the company, it is impossible to limit it to $500. The principle of the thing is the same, when it is extended to $5,000.

The case of these defendants v. *Baxter*, 22 Vt., 365, cannot aid the plaintiff. That rests upon the nature of the right exercised by Belknap, and that *he* could only have exercised it, by the authority conferred by the legislature, upon the company. Judgment affirmed.