[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 41 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 43 
The corporation defendant was organized November 30, 1881, by the consolidation of certain New York and Pennsylvania railroad companies, and it entered into contract with Brown, Howard Co., a construction company, to construct and complete the unfinished portion of its road. On the 1st of August, 1882, that company entered into a contract with George H. Thompson Co. to build the Buffalo division of the road; and on the 18th day of August, 1882, Thompson Co. entered into a contract with the plaintiffs to construct a portion of the Buffalo division. The two contracts were in all essentials alike, except as to the amount of work to be performed and the prices to be paid therefor, the price in the former contract for excavation being twenty-seven cents per cubic yard, and in the latter contract twenty cents per cubic yard. The plaintiffs' contract with Thompson Co. and the contract of Thompson Co. with Brown, Howard Co., both alike required the contractors to "construct and finish in the most substantial and workman-like manner, to the satisfaction and acceptance of the chief enigineer, etc., the graduation, etc., and such other work as may be required, etc., the said work to be finished as described in the following specifications, and agreeably to the directions from time to time" of the engineers. Among the specifications was the following:
"GRADATION. — Under this head will be included all excavations and embankments required for the formation of of the road-bed, cutting all ditches or drains about or contiguous to the road; the foundations of culverts, bridges, walls, trestle-work and foundations of buildings; the excavations and embankments necessary for reconstructing turnkpikes or common roads, in cases where they are destroyed or interfered with in the formation of the railroad, and all other *Page 45 
excavations or embankments connected with or incident to the construction of said railroad."
"EXTRA WORK. — Nor shall any claim be allowed for extra work, unless the same shall be done in pursuance of a written order from the engineer in charge, and the claim made at the first settlement after the work was executed, unless the chief engineer, at his discretion, should direct the claim, or such part as he may deem just and equitable, to be allowed."
In pursuance of their contract with Thompson Co. the plaintiffs entered upon their work, and at a certain point upon the road they cut through a considerable elevation, and after they had substantially completed the cutting, a large amount of earth from one of the sides caved into the cutting at four different times in the months of December, 1881, and January and February, 1882, and this earth the plaintiffs excavated and removed each time. It is for the expense of this work mainly that this action was brought, the plaintiffs claiming that they did it under contract with the defendant and for its benefit. The defendant interposed to the complaint a general denial and an allegation of payment.
To maintain their action, it was incumbent upon the plaintiffs to show, by satisfactory evidence, that they did the work for the defendant under an express or implied contract with it; and this, from a careful perusal of the evidence, we think they failed to show. The contract between the defendant and Brown, Howard Co. was not produced, and precisely what its terms were we do not know. But it appears beyond question that Brown, Howard Co. were under some sort of contract with the defendant to construct and complete its road. All the work was, in a general way, under their supervision, and they hired and paid all the engineers and entered into sub-contracts for the performance of the work. The proof on the part of the plaintiffs tends to show that they did this work for which the action was brought upon the request of the engineers in charge of the work, and under an agreement made with them by which such work was taken outside of their contract with Thompson Co., and was to be paid for at *Page 46 
cost and ten per cent added. We fail to find any evidence in the case tending legitimately to show that these engineers had any authority whatever from the defendant to bind it for this work, or on its behalf to enter into any contract with reference thereto. It is not pretended that they were clothed with any special authority so to do; and it cannot be inferred or presumed that while they were in the employment of Brown, Howard Co., they had any authority to bind the defendant by any contract which they should make. It is true that we do not know the precise relations which existed between Brown, Howard Co. and the defendant, except that in a general way they were a construction company engaged under some contract with the defendant in the construction of its road. It cannot be supposed that a construction company was organized, not as contractors to build the defendant's road, but as agents to take charge of and manage its construction for the defendant, with power to bind it by their contracts and engagements. Such a relation between the construction company and the defendant would be quite extraordinary and, we think, unusual. The plaintiffs coming into court alleging that they had done work for the defendant under an agreement with it had the burden of establishing their allegations, and if there is any defect or obscurity in the proof it is their misfortune. We know of no rule of law by which it can be held that that proof is supplied because the defendant did not produce the contract between it and Brown, Howard Co. It was open to the plaintiffs to take the evidence of Brown, Howard 
Co., or of any of them, and thus obtain some knowledge of their contract with the defendant; and it was incumbent upon them to show that the relations between that company and the defendant were such as to make the defendant responsible for the acts of the company's engineers.
Nor is there any sufficient proof that the defendant in any way ratified the agreement alleged to have been made by the plaintiffs with the engineers. It is not shown that it had any knowledge of the alleged agreement made by these engineers, *Page 47 
or that it knew that the earth in question had been removed from the cut on its account and outside of the contracts which had been made for the construction of the road. It is true that after the road was completed it took possession thereof as it had the right to do, and that in that way it had the benefit of the work done by the plaintiffs; but that was no ratification of the contracts made by the engineers and did not make it responsible for such work unless it in some way agreed to pay therefor.
It is not needful or profitable for us here to comment upon all the evidence with the view of showing how we reach our conclusion, as upon a new trial further evidence may be given and the deficiency which we think fatal may be supplied.
But we will go still further. If it be assumed that Brown, Howard Co., in some general and undefined way, could be treated as the general agents of the defendant for the construction of the road so that it would be bound by their contracts with Thompson Co., we should still reach the same conclusion. In that event the defendant would be responsible to Thompson Co. for all the work embraced within their contract according to the terms thereof and in no other way. Under that contract Thompson 
Co. were bound to make "all the excavations or embankments connected with or incident to the construction of said railroad" on the Buffalo division thereof, and that, we think, included all the excavation which might be necessary until the road was turned over to the defendant as a completed road. If, after a cutting was made the embankment on either side caved in, the contractors would be obliged to excavate and remove the earth at the contract prices. The plain purpose of the contract was to have the road completed and turned over to the defendant in a finished state. And it may well be doubted whether such an excavation would even be extra work. But if extra work, not covered by the precise terms of the contract, then it is provided in the contract that no claim should be allowed for such work "unless the same should be done in pursuance of a written order from the engineer in charge, and the claim made at the first settlement *Page 48 
after the work was executed." This was one of the terms of the contract and we are unable to perceive that the engineers had any power or authority to alter or change it. It was inserted in the contract to protect the defendant from claims for extra work which might be based upon oral evidence, after the work was completed and when it might be difficult to prove the facts in relation thereto. If the engineers in charge had an unlimited authority to change the contract at their will, and to make special agreements for work fairly embraced therein, then the defendant had very little protection from the reduction of their contract to writing. If these engineers were the agents of the defendant, they were its agents with special powers, simply to do the engineering work and to superintend and direct as to the execution of the contract. But they had no power to alter or vary the terms of the contract or to create obligations binding upon the defendant not embraced in the contract. For these conclusions the cases of Homersham v. Wolverhampton Water-works Company
(6 Exch. 137); Thayer v. Vermont Central Railroad Company
(24 Vt. 440); Vanderwerker v. Vermont Central Railroad Company
(27 id. 125, 130); Herrick v. Belknap's Estate (27 id. 673); Redfield on the law of Railroads, (Vol. 1 [5th ed.] pp. 431, 433) are sufficient authority. In Redfield the learned author says: "Where the contract contains express provisions that no allowance shall be made against the company for extra work, unless directed in writing under the hand of the engineer, or some other person designated, or unless some other requisite formality be complied with, the party who performs extra work, upon the assurance of any agent of the company that it will be allowed by the company, without the requisite formality, must look to the agent for compensation and cannot recover of the company either at law or in equity."
We are, therefore, of opinion that the judgment should be reversed and a new trial granted, costs to abide event.
All concur.
Judgment reversed. *Page 49