Summers, J.
It is difficult to determine from the charge of the court and the arguments of counsel whether this was an action for damages for false representations or an action for the amount due under a written contract as subsequently modified by parol, the alleged fraudulent representations being set out merely to show a consideration for the modification.
Conceding that a party may, without electing to. pursue one of two remedies, plead the facts and recover whatever he may be entitled to under the proof (a course sometimes as difficult to pursue as to try to sit upon two chairs), it becomes necessary to consider whether upon either theory he is entitled to recover.
It is manifest from the petition that Jolly Bros, based their claim on the parol contract. They aver that upon ascertaining that they had been deceived as to the character of the material in the big cut, they notified Kinsman that they would abandon the contract and claim damages for the fraud that had been perpetrated upon them. That Kinsman then *124 promised that if they would continue the work they should he paid for the excavating of the material of' which they complained what the same was reasonably worth, and that they should be paid for that and other work done by them between the tenth and fifteenth of each month for the work done in the preceding month. That they relied upon that promise, and performed the work “under said verbal contract so made, ’ ’ and that they quit the work because the railroad company failed to pay them the amount due under this new contract. That this is so is manifest also., from the fact that such a contract would waive the fraud. Robb v. Vos, 155 U. S., 13; McLean v. Clapp, 141 U. S., 429; Pintard v. Martin, 1 Smed. & M., Ch., 126.
The court instructed the jury that the suit was not upon the contract but for fraud, and then charged them that if they found for plaintiffs on the fraud, and that this new arrangement had been made, that they should allow plaintiff for the material, as to which the price was changed, removed by them, what it was reasonably worth to remove it, not exceeding forty cents per cubic yard. The court also, at the request of plaintiffs’ counsel, gave the jury the following instruction:
“If the jury find by a preponderance of the evidence that the defendant by its authorized agents agreed to pay plaintiffs for the material excavated and removed by them on or before the fifteenth day of each succeeding month and defendant refused to comply with said contract and pay plaintiffs in accordance with the terms thereof, then plaintiffs were authorized to quit said work and the defendant would be liable to them for all the work performed by plaintiffs under said contract. ’ ’
*125 Assuming that the plaintiffs could recover for the ■alleged false representations, the direction of the ■court that the jury should allow plaintiffs what it was reasonably worth to remove the blue mud, not ■exceeding forty cents per cubic yard, was perhaps not prejudicial to the railroad company.
Conceding, hut not deciding, that the acts of an agent, within the scope of the authority apparently incident to the position he holds, are deemed .the acts •of the principal, and that a stipulation in a written •contract, that it shall not he affected by inferences from conversations previous to its execution, will not ■shield a party from his false representations; in •other words, that the Baltimore & Ohio Railroad Co. is hound by a contract made in its name by an agent having apparent authority to make the contract, and is responsible for his false representations respecting the subject of the contract notwithstanding a •stipulation therein that the contract is not to he affected by inferences from conversations; and conceding also that a failure to make payments at the time stipulated in the contract would relieve the •other party from the obligation to go on, we proceed to inquire what authority, real or apparent, Kinsman had to contract for the Baltimore & Ohio Railroad Co.
The negotiations resulting in this contract were between Jolly Bros., and Joseph M. Graham and David Lee on the part of the railroad company. ■Graham was superintendent of the trans-Ohio division, and afterward chief engineer. Lee was •engineer of maintenance of way on that division. Graham says he got his authority to make the contract from Underwood, the general manager; and •after the negotiations were closed, after Jolly Bros. *126 had submitted one bid on April 1st, and then another, and had modified that on April 5th, the question of accepting their bid was considered, and a day or two before April 10th, Graham directed Lee to enter into the contract, and Lee directed Kinsman to-sign the company’s name to the contract, which he did. Kinsman had been in the employ of the company only a few weeks, and had seen the location of the improvements but once, and that from the rear’ coach of a train on his way over the road. The company, at the time, had no chief engineer. Kinsman was to be engineer in charge of the construction of these improvements, and the printed form of contract was changed by a provision to the effect that whenever the words “chief engineer” were used, they should be understood to mean the engineer of construction. Nothing had occurred prior to the execution of this contract to warrant an inference-that Kinsman had authority to contract for the Baltimore & Ohio Railroad Co., and plaintiff’s counsel do not so contend. So that the question is as to the-extent of Kinsman’s powers as delimited by the contract, and the contention of plaintiff’s counsel is that. Kinsman had the authority of the chief engineer;that by the terms of the contract:
“The chief engineer may make such allowances and estimates as he deems just for any loss or damage to the contractor resulting from delays of any kind, whether caused by failure to procure right of way, borrow pits, or materials required to be procured by the company, or to furnish plans, or from alterations in plans, or from any other cause whatever; and it is expressly understood that the contractor agrees to accept such allowances and estimates in full satisfaction of such loss or damage, the *127 decision of the chief engineer as to the amount of such loss or damage being final and conclusive and binding on both parties.
“17. The classification of all excavations, masonry, etc., shall be made by the engineer, or chief engineer, and their decision in regard to the same shall be final and binding, and from it no appeal shall be taken.
“And it is mutually agreed and distinctly understood, that the decision of the chief engineer shall be final and conclusive in any dispute which may arise between the parties to this agreement relative to or touching the same; and each and every one of said parties do hereby waive any right of action, suit or suits, or other remedy in law or otherwise, by virtue of the covenants and provisions herein, so that the decision of said chief engineer, shall in the nature of an award, be final and conclusive on the rights and claims of said parties.”
That these provisions invested him with authority to decide disputes, to determine the classification of the blue mud, and notwithstanding technically it fell under the classification “earth excavation,” to place it in a more expensive class. But clearly this is authority only to decide disputes and to make allowances for loss or damages growing out of the performance of the contract, and not authority to make new contracts. It gave him no authority to decide that the contract was voidable because of false representations, and it would be surprising that a contract which the superior officers of the company had thought it important to hedge with so many provisions might be set aside by the engineer of construction, and the company be bound by one simply to pay whatever the work was reasonably worth.
*128 And an agreement by Kinsman to pnt work admitted to belong, under the specifications, to one class in a higher class, would be a fraud on and not binding upon the company.
It follows that there could be no recovery on the alleged parol contract, and the next question to be determined is whether the judgment can be upheld on the basis of damages for false representations. There are cases in which it is said that a person who has been defrauded by another in making an executory contract is not barred of a remedy for his damages for the fraud by a subsequent performance of it on his part with knowledge of the fraud, acquired subsequent to the making and previous to the performance. That the extent of the rule is that the party defrauded, by performing his part of the contract with knowledge of the fraud is deemed to have ratified it and is precluded thereby from subsequently disaffirming it. But, by the better reason if not the weight of authority, the performance of an executory contract after knowledge of facts making it voidable on the ground of fraud in its procurement, is a waiver of any right of action for damages for the fraud. There are cases of part performance before discovery, and where it was impracticable to stop, in which it is held that performance was not a waiver.
As stating that performance is not a waiver the following may be cited: Mallory v. Leach, 35 Vt., 156; 82 Am. Dec., 625; Parker v. Marquis, 64 Mo., 38; Nauman v. Oberle, 90 Mo., 666; St. John et al. v. Hendrickson, 81 Ind., 350; Johnson, Admr. v. Culver, Admx., 116 Ind., 278; Whitney v. Allaire, 4 Denio, 554; Whitney v. Allaire, 1 N. Y., 305.
*129 And as holding that performance is a waiver: Saratoga & S. Railroad Co. v. Row, 24 Wend., 74; 35 Am. Dec., 598; People v. Stephens, 71 N. Y., 527; Selway v. Fogg, 5 M. & W., 83; Nounnan v. Sutter County Land Co., 81 Cal., 1; Sellar et al. v. Clelland et al., 2 Col., 532; Sell v. Miss. River Logging Co., 88 Wis., 581; Gilchrist v. Manning, 54 Mich., 210.
Here the facts were known within a week or two after the commencement of the work, and the plaintiffs conld not go on with the work, accept payment at the prices stipulated in the contract,' and then, when it proved a losing venture, quit and sue for damages on the ground that their loss was caused not by themselves in electing to go on with the work but by the false representations of the defendant.
This court is not required to pass on the weight of the evidence, however, speaking for myself alone, and in view of the charge of fraud I think it proper to do so, I am of the opinion that the verdict, on the question of false representations, is against the manifest weight of the evidence, and that it is quite apparent from the plaintiff’s evidence alone that the contract was not induced by fraudulent representations, but that the plaintiffs were not as careful as they should have been in ascertaining the character of the material to be moved, and that, when a losing venture stared them in the face, Kinsman urged them to go on with the work, and promised to intercede with his superiors for an additional allowance on the bad material in the big cut. They did go on for six months until their payments were held up because, so it is contended, of attachments and subcontractors’ liens, when they quit.
The action not being maintainable either on the alleged parol contract, or for damages for the al *130 leged fraudulent representations, may a recovery be had on the written contract 1
The contract provided for payments on monthly estimates, but it was agreed by the plaintiffs that the monthly estimates, or any part thereof, should not be payable until they had furnished evidence to the engineer that they had paid in full all laborers and subcontractors in their employ. It is contended that this provision of the contract is not pleaded and that it is not averred that the payments were withheld because of attachments or subcontractors ’ liens. However, it is averred that the plaintiffs without the consent of the defendant and without excuse abandoned the performance of the contract and refused to complete the same. This averment possibly is broad enough to make relevant proof of attachments or liens. Such proof was offered and the court erred in excluding so much of it as tended to prove the existence of such claims at the time the plaintiffs abandoned performance of the contract. The plaintiffs averred that by the parol modification of the contract they were to be paid on the fifteenth of the month, and the court charged the jury that if they found the defendant by its authorized agent so agreed, and the defendant did not pay as so provided, the plaintiffs could quit the work and recover for ,what they had done, but as has been already determined the parol contract was not binding on the company. The question as to whether and how much if anything the plaintiffs may recover on the written contract does not appear to have been considered and we have not critically examined the record to see whether it clearly appears that plaintiffs can recover nothing on the written contract, being of the opinion that it will be in .the furtherance of *131 justice to remand the ease for further proceedings, so that the question of plaintiffs’ rights under the written contract may be determined independently of any questions of modification or fraud.
As to the second cause of action, which is for extra work, the provision of the contract as to written orders for such work was for the benefit of the railroad company, and could not be waived by the engineer of construction. In Woodruff et al. v. Roch. & Pitts. Railroad Co., 108 N. Y., 39, 48, where a similar question was under consideration, Earl, J., says: “This was one of the terms of the contract and we are unable to perceive that the engineers had any power or authority 'to alter or change it. It was inserted in the contract to protect the defendant from claims for extra work which might be based upon oral evidence, after the work was completed and when it might be difficult to prove the facts in relation thereto. If the engineers in charge had an unlimited authority to change the contract at their will, and to make special agreements for work fairly embraced therein, then the defendant had very little protection from the reduction of their contract to writing. If these engineers were the agents of the defendant, they were its agents with special powers, simply to do the engineering work and to superintend and direct as to the execution of the contract. But they had no power to alter or vary the terms of the contract or to create obligations binding upon the defendant not embraced in the contract. ’ ’ Campbell v. Cincinnati So. Railroad, 9 Ky. Law Reporter, 799; 34 Am. & Eng. R. R. Cases, 113; Sanitary Dist. of Chicago v. McMahon & Montgomery Co., 110 Ill. App., 510.
*132 As to the fourth cause of action. The contract, in substance, provided that the company, giving ten days’ notice, might at any time, for any reason that seemed to it sufficient, and without fault on the part of plaintiffs, annul the contract, in which event the plaintiffs were to be paid in full the estimates for the work done, and such annulment was not to give them any claim for damages against the company. It appears, from the evidence, that plaintiffs furnished pipe of the value of about three hundred dollars, on requisition of the company, for the work to be done under the contract of May 19th, and for that, it is presumed, part of the judgment on this cause of action was affirmed by the circuit court, but there are no allegations in the pleadings to support a judgment for the value of the pipe.
It appears, therefore, that the plaintiffs could not recover on the parol contract for want of authority in Kinsman to bind the company; nor for damages for false representations, because, if proven, it appears from the petition that plaintiffs waived the fraud; nor on the contract of May 19th, because they therein agreed that the company might annul it without giving them any claim for damages," and it follows that the judgment is reversed and the cause remanded for further proceedings.

Remanded.

Spear, C. J., Davis, Shauck, Price and Crew, JJ., concur.