ELMER VAN BUSKIRK ET AL., DOING BUSINESS AS THE VAN BUSKIRK BUILDING COMPANY, PLAINTIFF IN ERROR, v. THE BOARD OF EDUCATION OF THE TOWNSHIP OF PASSAIC, IN THE COUNTY OF MORRIS, DEFENDANT IN ERROR.

Argued December 2, 1909—Decided February 28, 1910.

1. A building contract provided that the entire building should be completed by the 15th day of September. 1908, providing, however, that the owner remove the present building from the proposed site before the 15th of May, 1908. The contract further provided that the contractor should pay to the owner the sum of $25 per day as liquidated damages for each and every day's delay that the work shall remain unfinished after the date agreed upon for the completion of the same. The contract provided that in case of delay in completing the work caused by any act or default of the owner, or other contractor, the time for completion should be extended for a period equivalent to the time lost, such period to be fixed by the architect upon written demand of the contractor. There was no extension of time by the architect. The owner removed the old building entirely from the proposed site on May 17th. The building was not completed until November 14th. *Held*, that the contractor was liable for liquidated damages from September 17th to the date of the building's completion.
2. A building contract provided that no alteration, addition, deviation or omission which affected the price or the time for the completion of the work, should be done without a written order of the architect, approved in writing by the owner. *Held*, that there was no power in the architect to waive the provision for a written order.
3. A building contract provided that should the contractor be delayed in the completion of the work by the act or default of the owner, architect, or other contractor, then the time fixed for the completion of the work shall be extended to a period equivalent to the time lost by reason of such causes, which extended period shall be determined by the architect, no allowance to be made unless a claim is presented in writing to the architect within forty-eight hours of the occurrence of such delay. No written claims were made to the architect, and no allowances of time were made by the architect. *Held*, that parol evidence that the architect had promised the contractor that he would take care of it on final payment, was inadmissible in an action against the builder.

On error to the Supreme Court.

For the plaintiff in error, *Mackay & Mackay.*

For the defendant in error, *Vreeland, King, Wilson & Lindabury.*

The opinion of the court was delivered by

REED, J. This action was brought to recover the unpaid portion of the contract price of $8,309 to be paid by the board of education of the township of Passaic, in the county of Morris, for the erection by the plaintiff of a four-room school building, and to recover for extra work amounting to $574.40. After the allowance of certain payments plaintiff claimed a balance due of $2,650.40. At the close of the plaintiff's case the trial court directed a verdict for the sum of $647, and this writ of error brings up the judgment entered upon this verdict.

The reduction by the trial judge from the amount claimed resulted from the court's allowance to the defendant of liquidated damages for the failure of the plaintiff to complete its contract by the date stipulated in the contract, and it resulted further from the disallowance of the plaintiff's claim for extra work upon the building.

A general exception to the direction of the court raises the correctness of the judicial view upon both of these points. We will first consider the question of the allowance of liquidated damages. The contract provides as follows:

"The contractor shall complete the several portions and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to wit, foundation walls to be ready to receive joists by the 15th of June, 1908. Brick walls to be ready for rafters by the 10th of July, 1908. Plastering to be completed by the 15th of August, 1908. The entire building to be completed and ready for occupancy by the 15th day of September, 1908, providing, however, that the aforesaid owner removes the present building from the proposed site before the 15th of May, 1908."

The contract also contains a provision as follows:

"Should the contractor be delayed in the prosecution or

completion of the work by the act, neglect or default of the owner, of the architect, or of any other contractors employed by the owner upon the work, * * * then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid, which extended period shall be determined and fixed by the architect, but no such allowance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours of the occurrence of such delay."

There was no claim for extension of time under this clause presented to the architect, and no allowance made by the architect. The building was not completed until November 14th, 1908.

The contract also provides as follows:

"The work herein called for is to be hastened to completion as rapidly as possible consistent with first-class workmanship, and must be completed on or before the date agreed upon in the contract, and should the contractor fail to complete the entire work by said date, allowing such extensions of time, if any, in the case of such extra work as may have been agreed upon and certified to by the architect, then the contractor shall pay to the owner the sum of $25 per day as liquidated and ascertained damages for each and every day's delay that the work shall remain unfinished after the date agreed upon for the completion of the same. It is understood and agreed that by the signing of these specifications and the accompanying contract the contractor waives any legal defence he might have because of the omission of a bonus in event of the building being completed before the date agreed upon, the term liquidated and ascertained damages governing absolutely."

There was no allowance of an extension of time certified by the architect on account of extra work.

Under the clause the architect deducted from the contract price $25 each day from the 17th day of September, 1908, to the 14th day of November, 1908.

The plaintiff in error first insists that the language of the

contract is such as to lead to the conclusion that this clause was not intended to provide for liquidated damages, but was intended for a penalty only, and so the defendant was entitled only to such damages as it could prove had resulted from the delay in the completion.

This contention, however, is unsound. The delay for which these damages were to be paid was for the completion of the entire work. The facts bring the case under the control of the rule laid down in *Monmouth Park Association* v. *Wallis Iron Works,* 20 *Vroom* 132.

It is next insisted that the right of the defendant to be allowed liquidated damages failed because the old building was not removed from the proposed site before the 15th day of May, 1908.

It appears that the old building was not entirely removed from the proposed site on that date. The building was removed, but some stringers extended over the proposed site from May 15th to May 17th, when the building was entirely removed and placed in position, about twelve feet from the proposed site.

The view propounded by the plaintiff in error is that the removal of the old building before the date mentioned was a condition precedent to the right to recover any liquidated damages for any delay in the completion of the work. The plaintiff in error would read the clause providing for liquidated damages as if it read thus: "The contractor shall pay twenty-five dollars a day for each day's delay after September 15th, 1908, to complete the same, *only in case the old building is removed before May 15th, 1908.*" This, however, is not the language of the contract. By the contract the damages are to be paid for every day's delay that the work shall remain unfinished after the date agreed upon for the completion of same.

Now, the building was to be completed either on September 15th, 1908, or on a later date in case the contractor, in the completion of the work, by any act or default of the owner, or of any other contractor employed by the owner upon the work, should be delayed. In such case the contract pro-

vided that the time fixed for the completion of the work shall be extended for the period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architect.

It thus appears that if the contractor was delayed in the completion of the work by the neglect of the owner in failing to remove the old building before May 15th, the contract itself provided for an extension of the time for the completion of the work. In case of such extension, if there was a failure to complete the work at the end of the extended period, the work remained unfinished after the date agreed upon for the completion of same, for the provision for the extended period was as much agreed upon as was the fixed period, namely, September 15th, 1908, the liquidated damages were to be paid for each day's delay that the work remained unfinished—not after September 15th—but after the date agreed upon for the completion of the same.

By the failure of the plaintiff to give written notice to the architect of any claim for an extension of the time for completing the work, the time for the completion remained September 15th, although two days were allowed, namely, from September 15th to September 17th, and the direction for a deduction of liquidated damages from the 17th to the date of completion was correct.

The next question respects the disallowance of the plaintiff's claim for extra work. The contract provides thus:

"Should the owner at any time during the progress of the work desire any alteration, addition, deviation or omission from the drawings or from these specifications, such desire shall be acceded to by the contractor, and the same shall in no way affect or make void the contract. No such alteration, addition, deviation or omission which affects the price or the time for the completion of the work shall be done without the written order of the architect, which order shall specify such alteration, addition, deviation or omission, as the case may be, together with the cost of such change, and must be approved in writing by the owner on the said order."

There was no written order of the architect for any addition or alterations, and of course there was no approval of any such order by the owner, the board of education. The only certificate was the one tendered by the architect after the completion of the building, certifying the amount due, which was the amount of the verdict directed.

The plaintiff insists that there was evidence tendered which should have gone to the jury which was evidential of a waiver of this clause of the contract which required a written order for alterations; and that this testimony was erroneously overruled. The testimony thus excluded was that an extra heater was put in the school building—not by the contractor—but that its placing entailed extra work by him, and that he, the contractor, told the architect, "If you put in this heater, this is extra work for me," and the architect said, "Certainly;" that the contractor also asked the architect for a written order, and the architect replied that that would be taken care of on the final settlement. Further, that the architect was present, off and on, when the contractor was doing this work, and that the architect saw the bill for extra work, and did not object to it; that the architect told the contractor that he would have to make two more windows for fresh air.

All this, it is perceived, related to the conduct of the architect, and the insurmountable obstacle to the admissibility of this evidence as proof of a waiver is that the architect alone could not waive those clauses in the contract which required that any order he might make was to be in writing, and have the written approval of the owner. There is no pretence that the owner did anything that by the most liberal construction of the doctrine of waiver exhibited any waiver of these clauses. Even if the restriction had been that no alteration or addition should be done without the written order of the architect, and the requisition of the approval in writing by the owner had been absent from the contract, nevertheless, the architect alone could not have orally altered the terms of the contract, nor have created any obligations binding upon the owner, save in the manner provided by the

contract itself. *Huds. Bldg. Cont.* 21, 462; *Russell* v. *Sa da Bandeira,* 13 *C. B.* (*N. S.*) 149, 200; *Sharpe* v. *San Paulo Railway, L. R.,* 8 *Ch.* 579; *Rex* v. *Peto,* 1 *Younge & J.* 37; *Cooper* v. *Langdon,* 9 *Mees. & W.* 60; *Lord & Son* v. *Pryce* (reported in appendix to fourth edition *Emd. Bldg. Cont.* 664); *Woodruff et al.* v. *Rochester and P. R. R. Co.,* 108 *N. Y.* 39; *Stewart* v. *Cambridge,* 125 *Mass.* 102; *McIntosh* v. *Hastings,* 156 *Id.* 344; *Leverone* v. *Arancio,* 179 *Id.* 439; *Baltimore Cem. Co.* v. *Coburn,* 7 *Md.* 202; *Abbott* v. *Gatch,* 13 *Id.* 314; *O'Keefe* v. *St. Francis Church,* 59 *Conn.* 551.

It is also insisted by the plaintiff in error that there was testimony tendered which should have gone to the jury on the question of the waiver of the provision respecting the extension of time for completion. The building erected was a school building, to be placed on the site of an existing school building, and it was essential to the defendant that the completion of the new building should be at, or close to the date fixed in the contract; so, as already shown, liquidated damages were contracted for in case of delay in completion, and clauses were inserted in the contract to fix with certainty any allowance in time in the way of any extension in the period for completion. As already exhibited, the contract set out certain causes which would entitle the plaintiff to an extension of such time, and provided that the period of extension should be determined and fixed by the architect, but that no such allowance should be made unless a claim therefor was presented in writing to the architect within forty-eight hours after the occurrence of such delay.

On the trial, testimony was tendered to prove that the old school building was finally left within twelve feet of the new structure, so near, it was claimed, as to delay the work upon the new building.

Testimony was also tendered to show a delay in the work because of inability to get cheesecloth to close the windows while the plastering was being done; and delay in tearing out a stairway because of variation from the plans; and delay of the architect in furnishing details; and delay because of the architect's unreasonable insistence that the plaster was

too green to proceed with the work. In none of these instances, however, was there any claim for extension presented to the architect in writing, and of course there was no period of extended time fixed by the architect.

The insistence of the plaintiff in error is that notwithstanding the requirement of the contract already set out, nevertheless, the plaintiff is entitled to an allowance for such delay because he asked the architect for an order in writing, and the architect remarked that he would take care of it on the final payment. This, it is insisted, was evidence of a waiver by the architect of the clause requiring a written notice of a claim for an extension of time, and requiring a written extension. It is useless to discuss the question whether, even if the architect had the ability to waive the recited conditions contained in the contract, the testimony would have been sufficient to even go to the jury. The discussion would be useless because the architect possessed no such authority. The provisions in question were introduced into the contract for the security of the board of education, for the purpose of limiting its liability against uncertain claims resting upon parol testimony. No one could waive those provisions save the board of education, or someone authorized by that board to do so. That the architect was not so empowered is demonstrated by the line of cases already cited upon the point of an architect's ability to waive the clause respecting written orders for extra work.

So the direction of the trial judge, based upon these clauses in the contract, is unassailable.

In respect to the other assignments of error, it is sufficient to say that they all rest upon the assumption that it was permissible to prove by parol testimony the causes of delay in the completion of the work, and so to diminish the damages without any writing, and upon the theory that the architect was the agent of the board of education for all purposes including the right to waive the clause requiring written orders for extra work, and upon the theory that the clause respecting liquidated damages was only a provision for a penalty.

The conclusions we have reached upon all these points

are opposed to the admissibility of the tendered testimony, and are so dispositive of all these assignments.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VROOM, GRAY, CONGDON, JJ.   14.

*For reversal*—None.