June Term, 1861.

DODGE VS. McDONNELL.

DODGE
v.
McDONNELL.

| 14 | 553 |
|f112 | ⁵540₁|

The court should not nonsuit a plaintiff when there is any evidence, which, by the most favorable construction that could legitimately be given it, would sustain a verdict in his favor.

But where the plaintiff does not offer evidence upon which the jury might possibly find a proper verdict in his favor, it is the duty of the court to nonsuit him.

Where at the time a motion for a nonsuit was made, certain evidence necessary to sustain the case was wanting, so that strictly the motion should have been granted, yet if the defect was afterwards supplied by the other evidence introduced, the judgment would not be reversed for the refusal to grant the motion.

If a principal hold his agent out to the world as having certain authority, and third persons deal with him under that belief, the principal will be bound although the real authority of the agent did not extend so far.

Where a person has employed an architect to make plans and specifications for a house and do such other acts as architects usually do as such, and has engaged a contractor to do all the work and furnish all the materials, and has placed the money which will become due to the contractor, in the hands of the architect to be paid on the contractor's order, these facts do not warrant a jury in finding that the architect was made the general agent of the employer, and authorized to bind him by new contracts for materials, with other persons.

Where agency is to be proved by the subsequent ratification of the principal, there must be evidence of knowledge on the part of the principal, of all the material facts.

APPEAL from the County Court of *Dane* County.

This was an action to recover the price of some lime alleged to have been sold and delivered by one Williams to the defendant, the account for which had been assigned to the plaintiff, *Dodge*. After the plaintiff had closed his evidence, a motion for a nonsuit was made and overruled, and exception taken. Verdict for plaintiff; motion for new trial overruled, and judgment. The facts are sufficiently stated in the opinion of the court.

*J. C. Hopkins*, for appellant.

*Welch & Lamb*, for respondent.

*By the Court*, PAINE J. We can see no objection to the charge of the court below to the jury. Most of the instructions asked for by the defendant's counsel were given, and the one which was refused was perhaps objectionable upon the ground of assuming that nothing but a previous author-

December 11.

ity could render the act of an agent binding upon his principal, when a subsequent ratification might have the same effect.

But the conclusion to which we have come upon the effect of the evidence offered by the plaintiff, renders an examination of other questions unnecessary. It is well understood that courts should not nonsuit a plaintiff, when there is any evidence, which, by the most favorable construction that could legitimately be given to it, would sustain a verdict in his favor. But when such is not the case, it is the duty of the court to nonsuit the plaintiff. For if he does not offer evidence upon which the jury might possibly find a proper verdict in his favor, then there is no question to submit to them at all. We think such was the case here.

There are certain leading facts about which there is no question. The defendant was having a dwelling house erected. He made a contract with Kline to do the mason work and furnish the materials. Donnell was the architect, and an arrangement was made, for the benefit of Kline's employees, that as fast as money became due to Kline on the contract, it should be placed by the defendant in Donnell's hands, and by him paid over on Kline's order. This being so, the lime for which this suit was brought, was furnished by the witness Williams upon Kline's order. This he testified to himself. He said, it is true, that he "considered" that he sold it to the defendant, but that was evidently only the expression of his opinion as to the legal effect of his acts, and his own testimony shows beyond any question that, so far at least as the bill for the first month was concerned, he did not sell it to the defendant, for he says he never saw the defendant on the subject until the next spring, and he never saw Donnell in regard to it until he went, at the end of the first month, upon Kline's order, to Donnell, to get his pay. Even therefore if it should be assumed that Donnell was the defendant's agent for the purpose of buying materials for him, the plaintiff's claim for the bill furnished during the first month must fail, for the reason that Donnell never bought it, but it was furnished and delivered to Kline upon his own

order. It was Kline's debt, and the most that could be said would be, that Donnell promised to pay it; and even if he had authority to buy materials, that would not authorize him to bind the defendant by his promise to pay the debt of another person who had bought materials on his own account.

With respect to the balance of the claim, it becomes necessary to examine the evidence more particularly, to see what was the authority of Donnell, or how far the defendant held him out to the world as having authority to bind him. For although Williams nowhere pretended that any part of this lime was ordered by Donnell, and although there was no evidence, at the time the motion for a nonsuit was overruled, from which the jury could have found that any part of it was ordered by him, yet Donnell himself subsequently testified, "When Williams presented these bills I may have told him, if he would keep on, I would pay him at the next estimate." He does not say that he did tell him so, nor does Williams, but only that Donnell promised to pay the bills. But the jury might possibly have been warranted in inferring from this statement of Donnell's that he had so promised that if Williams would "keep on" he should be paid, that the remainder of the lime was delivered upon that request, and not on the original order of Kline.

And although this evidence was not in at the time of the motion for a nonsuit, so that the motion should strictly speaking have been granted, yet if the defect was afterwards supplied, and there was evidence enough in the whole case to sustain the verdict, the judgment would not be reversed for the refusal to grant the motion.

Giving the evidence then the most favorable effect possible for the plaintiff, what would the jury have been warranted in inferring in respect to the authority of Donnell? Certainly not that he had previous authority to buy these materials. He was the plaintiff's witness, and testified positively that he had no authority to buy materials at all; and there is no evidence to show that he had. On the contrary it is utterly improbable that he had any authority to buy materials for the mason work, or that the plaintiff had any agent

for that purpose, inasmuch as he had contracted with Kline to furnish the materials.

But if the defendant held him out to the world as having such authority, and third parties dealt with him under such belief, the defendant would be bound though his real authority did not extend so far. And it is upon this principle that the plaintiff's counsel principally rely. Did the defendant then hold Donnell out to the world as having authority to purchase materials for him? Certainly not by the mere fact of his employment as architect. An architect might have such authority delegated to him, but it does not belong to him as such. And no stranger would be warranted in inferring from the mere fact of such employment, that the architect had authority to contract for labor and materials. If it were otherwise, a man who had employed an architect to make the plans and specifications of his house, and then engaged with a contractor to do the work and furnish the materials, which is the usual course, might find himself bound by another contract entered into by the architect with somebody to do the same work and furnish the same materials. Such a position cannot be sustained for a moment.

What further facts appear from which the world might infer such authority? In pursuance of the arrangement made between Kline and *McDonnell* at the instigation of Kline's employees, Donnell received the money as fast as it became due to Kline, and paid it out on Kline's order. Assuming that Williams knew of the whole arrangement, he of course would have had no right to infer from the facts any authority in Donnell to bind the defendant by entering into new contracts for materials. He would then have known that in receiving the money and paying it out, Donnell was acting rather as the agent of. Kline than of the defendant. Neither would he have had any right to make such an inference, even though he only knew of the fact of payments upon Kline's order. Such an employment does not import any authority to make contracts for the party who placed the money in the hands of such depositary, any more than the fact that a banker pays out money on the order of a depositor implies an authority to bind him by contract with other

June Term,
1861.

DODGE
v.
McDONNELL.

parties. But here the very fact that the payments were made on the order of Kline was sufficient to notify any one that they were made in pursuance of some special arrangement, and in payment of a debt from the defendant to Kline.

It was also shown that Donnell drew, or supervised the drawing of, some of the subcontracts between Kline and those of whom he obtained materials. Such was the case of Kline's contract with Fairley for stone. But that is not making contracts for the defendant, and any one knowing those facts, instead of assuming that Donnell had authority to enter into new contracts for materials on behalf of the defendant, should rather infer that he had no such authority, inasmuch as all these parties contracted with Kline and not with the defendant. The natural inference from those facts is, that the defendant had contracted with Kline to furnish the materials, and consequently needed no agent to make further contracts.

None of the acts shown to have been done by Donnell, except the paying out of the money, were different from those usually performed by an architect, and we think that taking all together, there was nothing from which any one had the right to infer that he had authority to bind the defendant by new contracts. Not a single instance was shown where he had made contracts on behalf of the defendant, which the latter had afterwards recognized. It was not even shown that he had made any at all, or attempted to make any. And we can see no evidence upon which the question should have been submitted to the jury, unless we were prepared to say that where a party has employed an architect to make the plans and specifications of his house and do such other acts as architects usually do as such, and has then engaged a contractor to do the work and furnish the materials, and has placed the money due the contractor in the hands of the architect, to be paid on the contractor's order, such facts would warrant a jury in finding that the architect was made the general agent of such party and authorized to bind him by new and independent contracts with other parties. We are not prepared to say this, for we think such an inference would be entirely unwarranted.

But it is claimed that the defendant ratified the unauthorized act of Donnell, provided it is to be assumed that Donnell contracted for this lime. The only way in which such ratification is sought to be shown is this. Kline, after partly completing his contract, left it unfinished. The defendant had been away most of the time during the progress of the work. When he came back, he was applied to on behalf of Kline to effect a settlement. He replied that "he had been absent some time and did not know how matters stood, but he would have Donnell make out a statement to see how the account stood." Such a statement was made out by Donnell, in which this lime was charged to Kline, and including that charge the defendant had overpaid him about $300. It was very natural for Donnell, under the circumstances, in stating the account between the defendant and Kline, to put in this lime, as the orders of Kline for its payment had been presented to him and he had promised that they should be paid. And as the defendant had considerably overpaid Kline, without reference to this charge, there was nothing to call the defendant's attention particularly to it. There is no evidence that he ever recognized the correctness of this charge in the statement, after it was made by Donnell, or that he ever agreed to pay this claim. And we do not think the mere fact that Donnell put that charge into the statement which defendant directed to be made, constitutes any such ratification as binds the defendant. To be bound by a ratification the principal must know the facts. But it appears here that he was entirely ignorant how the account stood until it was made out by Donnell.

We are of the opinion, therefore, even assuming that the jury might have found that Donnell ordered this lime, that there was no evidence to show that he had any authority to bind the defendant by such a contract. We may say at the same time that we think the weight of evidence is decisively in favor of the conclusion that the whole lime was furnished upon Kline's order, and that when Willliams was sent by Kline to Donnell for his pay, the latter told him that he had no money then in his hands for that purpose, but that he would pay at the next estimate, supposing that Kline would go on

with the work, and that Kline's money would be placed in his hands thereafter as it had been theretofore. . If such was the fact, it is obvious that this is an attempt to recover of the defendant a claim which was a debt only against Kline.

When this case was formerly here, it did not call for any expression of opinion on the effect of the evidence, as the judgment was reversed for error in the charge. But as the questions now presented have made it necessary for us to examine the evidence, we think, for the reasons before stated, that the court below erred in not granting the motion for a nonsuit.

The judgment is reversed, with costs, and a *venire de novo* awarded.