## J. KENNARD & SONS CARPET CO. v. HOUSTON HOTEL ASS'N. (No. 237.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 23, 1917. Rehearing Denied Oct. 31, 1917.)

1. SALES ☞354(7)—ACTION FOR PRICE—ANSWER.

Answer, in action for price of lighting fixtures, *held* to sufficiently show wherein those furnished failed to comply with contract, and their smaller market value.

2. SALES ☞358(1)—ACTION FOR PRICE—CONDITION OF ARTICLES—EVIDENCE.

Evidence, in action for price of articles, of their condition at time of trial, as not complying with contract, is admissible, in connection with evidence that they were in same condition as when received.

3. APPEAL AND ERROR ☞1040(14) — HARMLESS ERROR—RULING ON PLEADINGS.

Overruling exception of argumentativeness and immateriality to part of answer in an action for price, that defendant was always ready to pay what it actually owed, and paid nothing because plaintiff insisted on payment of more, was not prejudicial, and so, under Court of Civil Appeals rule 62a (149 S. W. x), to be disregarded.

4. TRIAL ☞252(13)—INSTRUCTIONS—ASSUMPTION OF FACTS.

A requested instruction assuming authority of an architect, contrary to what the evidence shows without practical contradiction, is properly refused.

5. PRINCIPAL AND AGENT ☞101(4)—ARCHITECTS.

An architect as such has no authority to purchase materials or furnishing on behalf of the owner of a building.

6. APPEAL AND ERROR ☞302(4)—REVIEW—POINT NOT RAISED BELOW.

It cannot be urged on appeal that agency should have been taken as true, because alleged in the petition and not denied in the answer, plaintiff's requested instruction for a verdict being placed on the ground that the evidence showed the agency, and its motion for new trial giving no reason why refusal of the instruction was error, except that the evidence compelled the giving of it.

7. SALES ☞358(1)—ACTION FOR PRICE—EVIDENCE.

The defense to action for price of lighting fixtures being that prisms thereon did not comply with contract, opinion of plaintiff's witness that they were artistically and practically equipped with prisms is immaterial.

8. APPEAL AND ERROR ☞1056(2)—HARMLESS ERROR—RULING ON EVIDENCE.

There being no real contention, in action for price of lighting fixtures, that after they were installed prisms thereon were changed, exclusion of plaintiff's testimony that it would be possible for them to be so misplaced or changed was harmless.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by J. Kennard & Sons Carpet Company against the Houston Hotel Association. From an adverse judgment, plaintiff appeals. Affirmed.

Hutcheson & Bryan, of Houston, for appellant. Baker, Botts, Parker & Garwood, of Houston, for appellee.

HIGHTOWER, C. J. The statement of this case, as made by appellant in its brief, is found to be correct, and is adopted by this court, and is substantially as follows:

"The appellant, J. Kennard & Sons Carpet Company, sued the appellee, Houston Hotel Association, owner of the Rice Hotel in the city of Houston, to recover the sum of forty-two hundred and fifty-four ($4,254) dollars, alleged to be due appellant by appellee, for certain electric light fixtures in the way of chandeliers, brackets, etc., and for which the appellee agreed to pay the price set opposite each article, viz.:

| | | | | |
|---|---|---|---|---|
| 6 ceilings.. | $ 74 00 | $ 444 00 | | |
| 6 ceilings.. | 215 00 | 1,290 00 | | |
| 4 ceilings.. | 175 00 | 700 00 | | |
| 6 brackets.. | 82 00 | 492 00 | $2,926 00 | |
| 4 brackets (ballroom) | 82 00 | | 328 00 | |
| 4 crystal ceilings... | 250 00 | | 1,000 00 | |
| | | | $4,254 00 | |

"Appellee answered, claiming that it had never authorized any one to purchase for it the four crystal ceilings, amounting to $1,000, and admitting that it had ordered the other fixtures, amounting to $3,254.00, but that there was a partial failure of consideration, in that the fixtures as actually furnished were not according to the contract between the parties. The case was tried with a jury, whose verdict consisted of answers to special issues, and judgment was rendered upon this verdict in favor of appellant for the sum of twenty-one hundred and ninety-six ($2,196) dollars, with interest, making a total of twenty-five hundred and eighty ($2,580) dollars, that being the $3,254 less $1,058, the cost of making the fixtures according to the contract."

The item of the four crystal ceilings mentioned above, and for which appellant claimed appellee owed it $1,000, was not submitted at all for the jury's consideration; and it might also be here stated that the first item above mentioned, consisting of six ceilings, at an aggregate value claimed to be $444, was determined and found in favor of appellant by the jury, and that item is therefore out of consideration on this appeal.

The first five assignments of error relate to the action of the trial court in refusing to sustain certain special exceptions directed by appellant against that portion of appellee's answer, which reads as follows:

"(3) Defendant says that at the time the order was given for the fixtures which defendant did order from plaintiff, plaintiff represented to defendant that the fixtures to be supplied by it would be made and furnished, both in design, workmanship, and material, in accordance with the plans and sketches submitted to defendant at the time the selections were made by Mr. Jones in New York. All of the ceiling fixtures were to be furnished with a series of cut glass prisms in regular order and close together, whereas in each of said fixtures furnished the prisms are scattered, ragged, and irregular, and each fixture is furnished with several hundred prisms less than is stipulated by the contract of purchase. Defendant says likewise that the bands on which the prisms are hung are irregularly placed and improperly placed, and the fixtures throughout present an irregular and improper appearance. Six of the ballroom fixtures plaintiff agreed to furnish with a central

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

plate from which eight chains radiated to support the fixture. The fixture furnished has a central plate with only four chains radiating therefrom and the fixture has above five hundred (500) cut glass prisms less than called for by the contract of purchase. Defendant says that these fixtures have no market value as such, but the reasonable and fair cost in the city of Houston of making alterations in the fixtures so as to make them comply with the contract would be, on the six fixtures referred to, one hundred dollars ($100) each.

"(4) Plaintiff furnished to defendant ten bracket fixtures at eighty-two dollars ($82) each. These were agreed to be furnished with nine lights each and instead they were furnished with one light with a round ball. The fixtures agreed to be furnished were to stand ten inches from the wall, and to be of the workmanship and design shown on the photographs and sketches supplied by plaintiff to defendant. Instead of standing ten inches from the wall, as called for by the sketches, so as to present a neat and attractive appearance, the fixture is shorter and rests with the glass ball shoved against the side of the wall and the design of the fixture in the scroll work and supports thereof is not in accordance with the contract between plaintiff and defendant, and defendant says that there is no market value for the fixtures as furnished, but that the reasonable cost of rebuilding each of the fixtures, so as to comply with the contract, would be thirty-five dollars ($35).

"(5) There were supplied four other ceiling fixtures for the ballroom which lacked approximately five hundred cut prisms each of having thereon the number of crystals called for by the contract. There is no market value for the fixtures as furnished, but defendant says that the reasonable cost of taking down the fixtures and supplying the crystals and making it comply with the contract between plaintiff and defendant would be twenty-seven dollars ($27) for each fixture.

"(6) There are six other ceiling fixtures listed at seventy-four ($74) dollars each in plaintiff's petition, which lack approximately two hundred and fifty cut prisms each of having the number of prisms called for by the contract. Defendant says that these fixtures have no market value as such, but that the reasonable cost of furnishing the labor and material to make the fixtures comply with the contract of purchase would be eighteen dollars ($18) each.

"(7) Defendant says that if it is mistaken in its allegation that the fixtures supplied have or had no market value at the time they were furnished by plaintiff to defendant, then defendant says that the difference in the market value of the fixtures furnished and those contracted to be furnished is the same for each fixture as the amount alleged as the reasonable cost of labor and material to make the same a compliance with the contract of purchase.

"(8) By reason of the facts hereinabove alleged, the plaintiff has been guilty of a breach of its warranty as to the design, workmanship, and material in the fixtures furnished, by reason of which breach this defendant has been damaged in the sum of eleven hundred and sixty-six dollars ($1,166). Defendant therefore, pleads the amount of its damage herein as an offset against any recovery which plaintiff may make against this defendant herein."

[1] Without undertaking to quote or state in detail these special exceptions interposed by appellant, it will suffice to say that they challenge the sufficiency of the above-quoted allegations in defendant's answer, on the ground that the same are too general, vague, and indefinite to apprise appellant of the particulars and respects in which the fixtures furnished by appellant failed to comply and be in accordance with the fixtures contracted for, and also that such allegations in the answer failed to disclose how and why there was a difference in the market value between the fixtures actually furnished by appellant and those contracted for. After a careful consideration of these exceptions, we are of the opinion that none of them are tenable, and that the assignments of error from 1 to 5, inclusive, should be overruled.

[2] The sixth assignment of error challenges the action of the trial court in permitting appellee's witnesses Jones, Wood, Cook, and Davis, to testify, over objection of appellant, with reference to the number of glass prisms that should have been on each of the chandeliers or fixtures, and as to the number of prisms that were, in fact, on said fixtures at the time of the trial, or at any time since such fixtures were installed, and as to the manner in which such prisms or crystals were hung, and as to the bands on said prisms, and the arrangement thereof, and also that the court erred in permitting said witnesses to testify as to the value of each of such fixtures, and the cost of changing or making such fixtures according to the contract, as alleged by appellee, for the reason, substantially, that such evidence was irrelevant and immaterial to any issue made by proper pleading in the case.

The only proposition that we find under this assignment is as follows:

"The chandeliers having been received and installed by appellee prior to May 1, 1913, the evidence of the witness Wood as to the number of crystals on the chandeliers in 1915, and the evidence of the witness Cook as to the number of prisms at the time of the trial in May, 1916, could not throw any light on the number of prisms that were on the chandeliers when they were installed in 1913, two or three years before, and was therefore irrelevant and immaterial, and would only serve to mislead the jury."

In disposing of this assignment and proposition, we think it will suffice to say that the record in this case shows, without contradiction, that the fixtures in question were in the very same condition, as regards the number of prisms, crystals, chains, bands, and positions, as when such fixtures were first received and installed, and for that reason we hold that the evidence complained of was properly admitted, over the objection that the same was irrelevant and immaterial, and the assignment is overruled.

[3] The seventh assignment of error challenges the action of the court in overruling appellant's special exception, directed against subdivision 10 found in paragraph 3 of appellee's answer, the ground of exception being that such answer was argumentative, irrelevant, and immaterial, and alleged no fact which constituted a defense, or that raised any issues in the case.

We have examined the portion of the answer complained of, and without incumber-

ing this opinion by quoting the same, or even stating in substance the matter there complained of, we hold that appellant could not have been prejudiced in the least by the action of the court in overruling this exception, even if there had been error committed by the court in its action in this respect. The allegation, in substance, was that appellee had at all times been willing and ready to pay appellant what it actually owed appellant, but that appellant declined to take from appellee what was justly owing and due by it, but insisted upon payment of more than appellant knew it was entitled to receive, with interest, and that for such reason appellee had paid appellant nothing. This, we say, is in substance the matter complained of by this exception. The same is overruled. Rule 62a (149 S. W. x).

The eighth assignment challenges the action of the trial court in refusing to give to the jury appellee's requested charge No. 1, reading as follows:

"The jury are instructed that as it appears from the evidence in this case that E. J. Russell, architect for the defendant, was authorized and empowered by the defendant to contract with plaintiff for the ballroom and parlor fixtures, which aggregated in amount the sum of $3,254, and that the matter was left by the defendant to the discretion of said Russell, and he, having made said contract, and having accepted said fixtures as being according to contract, and there being neither pleading nor proof impeaching for fraud the judgment and discretion of said Russell in accepting said fixtures, you are instructed to return a verdict for the plaintiff for the said sum of $3,254, with 6 per cent. interest per annum thereon from the 1st day of May, 1913, until this date."

There are several propositions under this assignment, the first of which is:

"The undisputed evidence in the case showing that Mr. Russell had been given authority to purchase the ballroom and parlor fixtures, the presumption of law would be, and the facts in this case show, that he was the general agent of appellee for that purpose, and any instructions not communicated to the appellant would not limit the liability of the appellee, as principal, for the acts of its general agent, Russell."

[4] It will be readily seen that this requested charge assumed, unequivocally, that the said Russell, architect for appellee, was authorized and empowered by appellee to contract with appellant for the fixtures which were, in fact, furnished and installed by appellant, and that the whole matter, in connection with such fixtures, was left entirely to the discretion of said architect, and further assumed that because said architect did finally issue his certificate to appellant, to the effect that the fixtures furnished were those called for by the contract between appellant and appellee, that appellee was legally bound to pay to appellant the amount claimed to be the value thereof.

If the facts in this record showed, without dispute, that the said Russell was authorized to purchase for appellee the fixtures which were, in fact, furnished by appellant, then, of course, the court should have given this requested charge, and there would be no doubt about the correctness of the proposition of law following this assignment.

We have very carefully examined the entire record, and the evidence of every witness bearing upon this assignment, and instead of finding that the uncontradicted evidence shows that the said Russell had authority or was authorized to purchase for appellee the fixtures which were, in fact, furnished and installed by appellant, we find just the contrary, i. e., we find that the record discloses, without substantial contradiction, that the architect, Russell, was not, in fact, instructed, nor was he authorized, to purchase for appellee any fixtures which were not in accordance with and called for by the contract between appellee and appellant. We could not undertake to state in detail the evidence bearing on this point found in this voluminous record, but will state our conclusions of fact, which we think are supported by evidence, practically undisputed, in the record.

The appellant, J. Kennard & Sons Carpet Company, entered into negotiations with appellee, Houston Hotel Association, acting through its president, Jesse H. Jones, in December, 1912, which finally resulted in appellee agreeing to purchase from appellant certain electric light fixtures, to be installed by appellant in appellee's hotel then nearing completion in the city of Houston, Tex. Such fixtures were not carried in stock by appellant at the time the contract was entered into, but it was the intention and purpose of appellant to purchase such fixtures from a concern in New York, who was a manufacturer of such fixtures, which concern was L. Plaut & Co. The contract for the purchase of the fixtures which appellee ordered was made between Jesse H. Jones, appellee's president, and one Herman Plaut, a member of the concern of L. Plaut & Co., the said Herman Plaut being the agent of and acting for appellant in entering into and making such contract with appellee's president, Jones. This contract between appellant, acting through Herman Plaut, and appellee, acting through its president, Jones, was entered into in the city of New York, and finally consummated, as this record shows, when carefully analyzed, on the 4th day of January, 1913. It was a verbal contract, it seems, but the character of the fixtures to be furnished was fully delineated and shown by drawings, maps, and sketches, which were exhibited to appellee's president, Jones, by the said Herman Plaut, as agent for appellant. These drawings and sketches are in the record before us, and they were introduced, of course, in evidence upon the trial below.

At the time this contract for the purchase of these fixtures was entered into, the firm of Mauran, Russell & Crowell, domiciled in

the city of St. Louis, Mo., were the architects of appellee, in connection with appellee's hotel then nearing completion at Houston, Tex., and Mr. E. J. Russell of that firm had personal supervision of the matters pertaining to the contract between his firm and appellee. Just before the contract for the purchase of these fixtures was entered into between the said Herman Plaut and the said Jesse H. Jones, each acting as aforesaid, Mr. Jones, in company with Mr. Russell, in the city of New York, was looking over fixtures of the character in question, with a view to making a selection for appellee's hotel in Houston, and it appears from the record that they, together, discussed several designs of different manufacturers, including as many as three, at least, different manufacturers, and that before any designs were fully agreed upon between Mr. Jones and Mr. Russell, Mr. Russell left New York, and went back to St. Louis, knowing at the time he left New York that Mr. Jones had not then determined upon any certain designs or scheme of fixtures, but that he (Jones) was considering designs furnished and exhibited by three different concerns, including those of appellant, acting through its agent, Herman Plaut, and all of the parties, that is Mr. Jones, Herman Plaut, and Mr. Russell, knew that appellee wanted to procure fixtures at the earliest possible moment, and that no time could be lost in securing them. Within the next few days after Mr. Russell left New York, several telegrams passed between him and Mr. Jones, who was still in New York, regarding the fixtures to be purchased, one of which telegrams, and the only one which we regard of sufficient materiality to set out here, was as follows:

"New York, N. Y., Jan. 3, '13.

"E. J. Russell, Chemical Bldg., St. Louis, Mo.: Do I understand that building is being wired so we can use current from city company and later change to our own plant? If so, I would prefer not putting in plant at this time as I am already too near broke, but if necessary could strain a point. Our original alternate for plant was twenty thousand two hundred fifty. See if we cannot get it now at same figure. Am ready to buy laundry, but think we had better locate it in annex basement, and will have Meador & Matthews make contract direct if that sounds feasible to you. I like Chassaing's ballroom fixtures better than Plaut's, but time is an object and suppose we will have to trade either with Plaut or Tiffany, unless Chassaing would be willing to install temporary fixtures satisfactory in event he was unable to get others ready. I am not especially favorable to the large amount of composition apparent in Plaut fixtures, but it may work out all right. Will leave it with you and thank you to close it. I do not think it possible for us to open before March 1st.     Jesse H. Jones."

As stated above, the foregoing telegram shows that, at the time same was sent by Jones to Russell, Jones was still undecided as to whose designs he would accept, that is, those of Tiffany, those of Chassaing, or those of Plaut, acting for appellant, and it is man-

ifest from such telegram, when construed in the light of all the other evidence bearing upon that point, and which is uncontradicted, as shown by the record, that Mr. Jones simply intended that Mr. Russell should exercise his judgment in purchasing such fixtures, only as between those offered by the three concerns named, the sketches and plans of which were then known, both to Mr. Jones and to Mr. Russell, but the evidence in this record shows conclusively, and without contradiction, that Mr. Russell was not instructed, or authorized, or expected, to make purchases of any fixtures other than those, the sketches of which had been furnished by the above-mentioned three concerns handling such fixtures. Indeed, it is not seriously contended by appellant, as we understand its contention here, that Mr. Russell was authorized under this contract with the appellee, to purchase, for the use of appellee, electric fixtures such as in his judgment might be suitable for appellee's building, but the uncontradicted evidence in the record shows that Mr. Jones, appellee's president, in his contract with Mauran, Russell & Crowell, expressly reserved the right to pass upon all material and work furnished and used in appellee's building, and that no work or material done upon or placed in same could be accepted by said architects, without being first submitted to him, Jones, and he consenting thereto. Again we say at this point that we could not afford to set out this testimony, and keep within reasonable bounds in this opinion. Otherwise, we would be glad to set out this testimony bearing upon this point.

Now, after this telegram of January 3, 1913, above quoted, was sent by Mr. Jones to Mr. Russell, on the very next day, January 4, 1913, Mr. Jones, seemingly anxious on account of the short time which he felt he had in which to procure the desired fixtures, authorized Mr. Herman Plaut, as the agent of appellant, to proceed with the manufacture of the fixtures shown by the designs and sketches furnished by Herman Plaut to Mr. Jones, as hereinbefore stated, and at the same time again apprised Mr. Plaut, acting as the agent of appellant, of the necessity of quick action in getting said fixtures completed.

At the time this contract between Mr. Jones and Herman Plaut, acting for their respective principals, was finally consummated, as just above stated, Mr. Russell was not present, and had nothing to do, at that time, with the consummation of this contract, and Mr. Plaut, as the agent of appellant, knew and understood, at that time, and from the beginning of negotiations between him and Mr. Jones, that Mr. Jones, as appellee's president, was personally acting for appellee in the selection of the electric fixtures, and everything in the record goes to show that Mr. Plaut well knew that it was Mr. Jones and not Mr. Russell who was to ultimately determine and decide upon the fixtures that should be fur-

nished. Now it is true, that at the time Mr. Jones closed this contract with Mr. Plaut, as agent for appellant, he stated to Mr. Plaut, in substance, that his, Plaut's firm, would receive a formal order from Kennard & Sons Carpet Company, but at the same time advised him not to wait for such formal order, but to proceed at once with the manufacture, etc., of such fixtures as were agreed upon and shown by the sketches and designs furnished by Mr. Plaut, as appellant's agent. Shortly after this, and prior to the 9th of January, Mr. Jones wired Mr. Russell, in substance, that he (Jones) had accepted the Plaut fixtures, and furnished by mail to Mr. Russell the sketches and designs or photographs of said fixtures, as agreed upon, which designs or photographs were expected to be furnished by Mr. Russell to J. Kennard & Sons Carpet Company, at St. Louis, and thereafter Mr. Russell wired Mr. Jones, acknowledging the receipt of such photographs or designs, and stating that he had taken the matter up with J. Kennard & Sons Company, with instructions to proceed to furnish same, etc.

The evidence in this record is positive and uncontradicted to the effect that the firm of Mauran, Russell & Crowell, nor any member thereof, was authorized, at any time, to accept or purchase from appellant any fixtures that were strictly not in accordance with the contract between appellant and appellee, but appellant takes the position that it knew nothing about the understanding between appellee's president, Jones, and said architects, that he (Jones) was to have the right to pass upon all work and material used in said hotel building, and that the facts and circumstances in evidence were sufficient to show that said firm of architects, and especially the said Russell, sustained the relationship of general agent to appellee for the purpose of purchasing the materials in question, and that having furnished said fixtures, if there were any of them that were not strictly in accordance with the contract between appellant and appellee, as shown by the plans and sketches and drawings, that still, the same having been agreed upon by the said Russell, appellee will be bound thereby, upon the theory, presumably, that what the architect, Russell, did in that connection, was at least within the apparent scope of his authority. In answer to this contention, we must say that the record discloses, without contradiction, that appellee never at any time did anything or said anything that could lead appellant reasonably to the conclusion that said architects or any of them were authorized to make any purchases of any such fixtures, other than were described and called for in the contract between appellee and appellant, acting through its agent, Herman Plaut. Appellant strenuously insists, in its brief, that the telegram of January 3, 1913, above quoted, was, of itself, sufficient to show that Mr. Russell was authorized to use his judgment general-

ly in selecting such fixtures for appellee, but, as hereinbefore stated, before any action was taken by Mr. Russell, appellant's agent, Herman Plaut, had closed the contract with appellee's president, and the fixtures covered thereby were exhibited and clearly shown by the sketches and designs furnished by said agent, Plaut, and everything in the record goes to show that there was nothing from which appellant might reasonably conclude or assume that there was any authority on the part of Mr. Russell to purchase any fixture whatever not in accordance with the contract so agreed upon.

[5] The record in this case, when clearly understood, discloses, without contradiction, that the firm of Mauran, Russell & Crowell were acting for appellee in their capacities as architects only, and not as general agents for any purpose, and it seems to be well settled that an architect, as such, has no authority to make purchases of any character of material or furnishings, on behalf of the owner of a building, and therefore an attempt on the part of an architect to bind the owner of a building by purchasing material or fixtures for such a building will not, of itself, have the effect to bind such owner. 2 Am. & Eng. Ency. of Law (2d Ed.) 820; Fitzgerald v. Moran, 141 N. Y. 419, 36 N. E. 508; Dodge v. McDonnell, 14 Wis. 553; Woodruff v. Ry. Co., 108 N. Y. 39, 14 N. E. 832; Leverone v. Arancio, 179 Mass. 439, 61 N. E. 45; Mechem on Agency (2d Ed.) vol. 1, par. 992.

In conclusion on this point, we say that the evidence in this record shows, without material contradiction, that the only authority which was given Mr. Russell to purchase ballroom and parlor fixtures for appellee's hotel was only to the extent of purchasing such fixtures as had been exhibited by appellant, through its agent, to appellee's president, and the record further shows, without contradiction, that the relation sustained by Mr. Russell to appellee was not that of general agent, but the very most that could be said in favor of appellant's contention on that point would be that he was only a special agent of appellee, and neither by his acts in the latter capacity, nor in that of architect, could he bind appellee by purchasing or accepting fixtures other than those that he was instructed to purchase, as coming within the contract between appellant and appellee.

[6] There is another proposition urged by appellant under this assignment, as follows:

"Appellant having specially alleged that Russell was the duly authorized agent of appellee, and this not having been denied under oath, the agency should be taken as true."

Objection is interposed by appellee to the consideration of this proposition, because the proposition that appellee failed to deny under oath the authority of Russell to bind it by his written certificate that the fixtures purchased were in conformity with the terms of the contract of purchase was not raised in

the motion for a new trial, nor elsewhere assigned as error in the trial court.

We have carefully examined the record in connection with this objection, and think that the objection is well taken, and therefore decline to consider this proposition. It is true that the requested instruction sought to be given to the jury was seasonably requested, and its refusal by the court was timely excepted to by appellant, but this bill of exception fails to disclose that any reason for the giving of the charge was called to the attention of the court, other than that stated in the charge itself, and the reason as there stated was that the evidence in the case disclosed that Russell was authorized to purchase the fixtures, and that he did, in fact, purchase them, and accepted them, and that appellee was bound by the acts of Russell in so doing, there being no pleading or proof of fraud actuating Russell in so doing. Thus it will be readily seen that there was nothing in this requested charge that would probably call to the trial court's attention the fact that appellant's allegation that Russell was the duly authorized agent of appellee to purchase such fixtures, and that, since such allegation of agency had not been denied under oath by appellee, such allegation should be taken as true. On the contrary, the only reason for asking the charge, as expressly appears therefrom, was upon the ground that the evidence conclusively showed such authority in Russell, and also that there was no pleading or proof of fraud on the part of Russell. Thereafter, in appellant's motion for new trial, this action of the court was assigned as an error committed by the court, but in this assignment there was no reason stated why the action of the court in this regard constituted error, other than the reason stated in the charge itself, that the evidence compelled the giving of the charge.

There are several other grounds of objection urged to the consideration of this proposition, but having determined that this one should be sustained, we have not considered such other objections. See district and county court rule 67 (142 S. W. xxii). This rule provides:

"Each ground of a motion for a new trial, or in arrest of judgment, shall briefly refer to that portion of the ruling of the court, charge given to the jury, or charge refused, admission or rejection of evidence, or other proceedings, which are to be complained of, in such a way that the point of objection can be clearly identified and understood by the court."

Rule 24 (142 S. W. xii) for the Courts of Civil Appeals provides:

"The assignment of error must distinctly specify the grounds of error relied on and distinctly set forth in the motion for a new trial in the cause, and a ground of error not distinctly set forth in the motion for a new trial in the cause and not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived, unless it be so fundamental that the court would act upon it without an assignment of error, as mentioned in rule 23 [142 S. W. xii]."

Rule 25 (142 S. W. xii) provides:

"To be a distinct specification of error, it must point out that part of the proceedings contained in the record in which the error is complained of in a particular manner, so as to identify it, whether it be the portion of the charge given or refused, and the particular matter in which the judgment is erroneous or irregular, with such reasonable certainty as may be practicable in a succinct and clear statement, considering the matter referred to, and must refer to that portion of the motion for a new trial in which the error is complained of."

See, also, Traction Co. v. Emerson, 152 S. W. 468; Peacock v. Coltrame, 156 S. W. 1088.

Another proposition urged by appellant under this assignment is to the effect that appellee, having received, retained, and used the fixtures, and there being no express warranty surviving any failure of the fixtures to be according to contract, the appellee was bound to pay the full contract price.

Appellee also objects to the consideration of this proposition on the same ground as that interposed in connection with the consideration of the preceding proposition, and after examining the record in connection with this proposition and objection, we doubt whether we should consider it; but not being sure that we would be justified in disregarding this proposition, we have considered same.

As shown by the charge requested, the same assumed that appellee did, in fact, accept and retain the fixtures delivered by appellant, as a full compliance, and as being in accordance with the contract, while, as a matter of fact, in our opinion, the record discloses just the contrary. We think that when all the evidence in this record is carefully analyzed, it must be concluded that appellee never did accept all the fixtures furnished by appellant as a compliance with the contract of purchase, but that appellee expressly declined so to do at the time his attention was first called to the fixtures, and we think that it is shown, beyond dispute, in this record, that appellant was fully apprised of the fact that appellee had not accepted and would not accept such fixtures as a compliance with the contract, many months prior to the claimed acceptance of same by the architect, Russell, and the issuance of his certificate to that effect. Indeed, this record discloses that appellant was notified promptly of appellee's refusal to accept these fixtures as a compliance in full with the contract, and appellant undertook to remedy some of the defects complained of, and, in fact, the record in this case discloses that there was not and is not really a serious contention that the fixtures furnished by appellant complied in all respects with the contract. For this reason, the trial court would not have been justified, but would have been clearly in error, had it given this charge. The assignment is therefore overruled.

The ninth assignment complains of the action of the trial court in refusing the following instruction requested by appellant:

"The jury is instructed that the evidence in this case shows that E. J. Russell was authorized by the defendant to contract for the fixtures included in the general order, aggregating $3,-254, which included the brackets, and that he had the authority to change said brackets from a candle effect to a beaded ball effect, and the defendant, having received said brackets and used the same, and its president, Jesse H. Jones, having impliedly accepted the same as being satisfactory, the jury will find a verdict in favor of the plaintiff as to said brackets."

The proposition under this assignment is as follows:

"Appellee, having expressly authorized E. J. Russell to purchase the electric light fixtures for the ballroom, this gave him the power, so far as appellant was concerned, to make the change in the brackets from a candle effect to a beaded ball effect, it not being shown that the appellant knew of any restriction upon Mr. Russell's authority, and the facts not showing any such restriction, the appellee was bound by Mr. Russell's acts in that regard."

It will be readily seen that the charge requested, the refusal of which is here complained of, assumes that the architect, Russell, was fully authorized to act for appellee in selecting and purchasing the fixtures mentioned, and to make the change as to the bracket fixtures, causing them to differ materially from the fixtures originally ordered by appellee, and, consequently, that appellee was bound by Russell's acts in all respects. We again repeat that the evidence in the record, when fairly and properly analyzed, fails to show that Mr. Russell had any such authority as this charge assumes, but, on the contrary, we think the evidence clearly shows that Mr. Russell had no such authority, and that appellant would not be justified in concluding that any such broad authority was conferred upon Mr. Russell. We think the court, in view of the state of the evidence on this point, was clearly correct in refusing this instruction, and the assignment of error is overruled.

Appellant's tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments of error relate to the action of the court in refusing to give to the jury certain special instructions, all of which we have carefully considered, and have concluded that the court was correct in refusing them all, for the reason that there was no basis in the evidence for such charges, and such assignments are therefore overruled.

[7] The sixteenth assignment of error complains of the action of the court in refusing to permit appellant's witness, Plaut, whose deposition was taken, to testify in substance that in his (witness') opinion, at the time the fixtures left New York they were artistically and practically equipped with prisms.

As heretofore stated, the fixtures desired by appellee, and which are in question here, were to be manufactured and furnished according to certain sketches and drawings, which were exhibited to appellee's president in New York by appellant's agent, Herman Plaut, and these sketches and draw-ings clearly showed the character of these fixtures in every particular, the manner in which prisms and crystals were to be placed thereon, and according to such sketches and plans, it would appear that these prisms and crystals were to be so adjusted and arranged and regularly distributed as to all but touch one another, leaving hardly any visible space between them, presenting a symmetrical and uniform whole, whereas, it was shown without dispute, in the evidence, that these prisms and crystals, bands, etc., were not placed on said fixtures in the manner and form and numbers as shown by these maps and sketches, and therefore there was a failure on the part of appellant to comply with said contract in the furnishing of said fixtures, and the opinion of the witness Plaut as was sought to be introduced, to the effect that these fixtures, when they left New York, were artistically and practically equipped with prisms, was entirely immaterial, in the view we take of it. It might be true that at the time such fixtures left New York Mr. Plaut thought that they looked very appropriate and were, in fact, just what appellee needed, and, as stated, that they were practically and artistically equipped with prisms, etc.; yet appellee was not contracting for fixtures that appeared to Mr. Plaut or appellant to be the appropriate and most suitable designs for appellee's hotel in Houston, but contracted with appellant for fixtures that were clearly and carefully exhibited by designs and plans exhibited to appellee's agent at the time of the making of the contract of purchase. If such fixtures had been furnished as called for by these plans and sketches, then appellee would have been bound to pay for same, whether such fixtures were, in the opinion of appellant or its agent appropriate for the purposes for which they were intended, or not; but as they did not accord with such plans and designs, and therefore were not according to contract between the parties, appellee was not bound to accept or pay for same, even though, in the opinion of appellant or its agent, they were appropriate and practical for the purposes intended. The assignment of error is overruled.

[8] The seventeenth assignment complains of the action of the court in refusing to admit certain testimony tendered in a deposition of C. J. Mueller. The testimony tendered was as follows:

"In putting on these prisms, they hang over a band, and the person that is washing them can slip them and have them close together, or they can have them an inch apart. Furthermore, they can misplace the prisms by putting more on one band than on another, making these fixtures look irregular."

We think there was no material error, if error at all, in the action of the court in this regard, for the reason that there is really no contention, as shown by the record, that any of the prisms or other parts of the

fixtures had been misplaced or changed since they were installed in the hotel at Houston, and the mere fact, as sought to be shown by the witness, that it would be possible to so misplace or change such fixtures, would have little relevancy to any real issue in the case, and we feel sure that if the action of the court in refusing this testimony was error, it would not be of sufficient magnitude to warrant a reversal of the judgment.

The eighteenth assignment of error challenges the verdict of the jury as being excessive in the amount of set-off allowed appellee by the verdict.

The amount of this set-off was $1,058, and, without discussing in detail the testimony bearing upon this point, we have concluded that the evidence was sufficient to warrant the verdict of the jury, in allowing this amount as a set-off to appellant's claim, and this assignment is therefore overruled.

What we have said disposes of all assignments of error found in the record, and it follows therefrom that in the opinion of this court the judgment of the trial court should be affirmed, and it is so ordered.